## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CHEE VANG, YEE VANG, MAO LEE, & YENG HER, as mother of J.Y., a minor, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>          v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,<br>               Defendant. | Case No. 20-cv-1260-JES-TSH |

## ORDER AND OPINION

This matter is now before the Court on Defendant State Farm Mutual Automobile Insurance Company's Motion (Doc. 17)[1] to Dismiss Amended Complaint for Lack of Standing and for Failure to State a Claim and Memorandum (Doc. 18) in Support, Plaintiffs' Response (Doc. 21) in Opposition to Defendant's Motion, and Defendant's Reply (Doc. 23).

### BACKGROUND

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

### The Parties and Automobile Insurance

Defendant State Farm Mutual Automobile Insurance Company is an insurance company incorporated under the laws of Illinois, with its principal place of business in Bloomington, Illinois. Doc. 15, ¶ 25. Defendant sells automobile insurance, which includes policies for health care. *Id.*, ¶ 26. Such "health care" includes bodily injury protection, medical payments known as Personal Injury Protection ("PIP"), uninsured motorist benefits, underinsured motorist benefits,

---

[1] Citations to the Docket in this case are abbreviated as "Doc. __."

1

and liability payments for bodily injuries arising from automobile accidents. *Id*. Most states require automobile insurers to provide coverage for medical expenses incurred because of an automobile accident, such as liability insurance, which covers bodily injury to another or PIP benefits, which covers healthcare expenses incurred by the insured or passengers. *Id.*, ¶ 28. Some states, including Minnesota, have adopted "no-fault" statutes that require insurance companies to compensate injuries suffered in automobile accidents within a particular time period. *Id.*, ¶¶ 30, 32, 35. All named Plaintiffs[2] are citizens of Minnesota who were insured by State Farm under "no-fault" automobile policies. *Id.*, ¶¶ 19–23. They are of the Hmong ethnicity, which is a group of people based in East and Southeast Asia that began immigrating to the United States in the 1970s. *Id.*, ¶ 24.

### Dr. Lee and TIN Diversion

Plaintiffs were involved in automobile accidents in 2017 and 2018 while insured under no-fault automobile insurance policies issued by Defendant that included PIP coverage mandated by Minnesota's No-Fault Act. *Id.*, ¶¶ 19–23, 118, 133, 49. Each of them received treatment for their injuries in the months following the accidents from the same chiropractor, Dr. Jer Lee, at the Chiro Health Clinic in Minnesota. *Id.*, ¶¶ 119, 135, 151. State Farm delayed paying Dr. Lee's bills under their PIP coverage because "State Farm had secretly imposed a TIN diversion or TIN block on Dr. Lee and Chiro Health Clinic." *Id.*, ¶ 165. TIN (taxpayer identification number) blocks and diversions are tools State Farm uses while investigating potential provider fraud. *Id.*, ¶¶ 79–81. State Farm uses its tools to identify providers with certain "treatment patterns, sharp

---

[2] Plaintiffs Chee Vang, Yee Vang, and Xeng Thao are named policy holders. Mao Lee is insured under the policy issued to her mother, Yee Vang, and J.Y. is insured under the policy issued to her step-father, Xeng Thao, and her mother, Yeng Her. *See* Doc. 15, ¶¶ 19–23. Plaintiff Thao voluntarily dismissed his claims in this lawsuit on October 2, 2020. *See* Doc. 16. Thao is referenced in the Complaint, but he is no longer a Party to this litigation. The Court refers to J.Y. as Plaintiff even though she is represented by Yeng Her.

increases in billing, or high volume of billing" as potential "projects" overseen by State Farm's anti-fraud Multi-Claim Investigation Units ("MCIUs"). *Id.*, ¶¶ 57–58, 63. State Farm identifies "projects" by tracking "how much a particular provider has billed State Farm," "usage of certain Current Procedure Technology ("CPT") codes," and "the frequency with which medical providers have patients in common." *Id.*, ¶¶ 73, 76, 78. State Farm tracks this information using its Potential Fraud Management Tool ("PFMT") and Value Assessment Tool ("VAT"). *Id.*, ¶¶ 70–72. State Farm uses its PFMT and VAT to identify "which doctors cause State Farm to pay the most in automobile-accident bodily-injury claims." *Id.*, ¶ 72. All claims involving a "project" provider are routed to MCIU staff who can issue a TIN diversion. *Id.*, ¶¶ 79–80. Once a diversion is issued, any bill from that provider is routed to MCIU staff for review. *Id.*, ¶ 80. TIN diversions allow MCIU staff to investigate potential fraud before paying a provider, while TIN blocks bar any payment to the provider. *Id.*, ¶¶ 81, 91.

Plaintiffs claim State Farm once instructed personnel in an unidentified internal document that, "one of the factors in deciding whether a particular provider is 'suspect' is whether the provider's patients 'are from an immigrant community.'" *Id.*, ¶¶ 5, 98. Plaintiffs quote this document twice in their Complaint, but they chose not to identify the document they quote from, when this occurred, whether this document is still in effect, or whether this was one of the factors State Farm used when it chose to secretly impose a TIN diversion or block on Dr. Lee. Plaintiffs allege that State Farm's approach to investigating potential provider fraud is intended "to avoid payment of claims for treatment to State Farm policyholders and insureds who are racial or ethnic minorities" by targeting providers who are minorities or immigrants or serve those communities. *Id.*, ¶¶ 5, 79. Plaintiffs also allege State Farm is harassing insureds to put doctors that serve immigrant and minority communities out of business. *Id.*, ¶ 66.

***The Class***

Plaintiffs seek to represent a class consisting of the following individuals:

All persons in the United States who had coverage under a policy issued by Defendant for medical or chiropractic expenses and who sought payment for services for medical or chiropractic expenses (or had another person seek payment under the person's policy) from a provider that was subjected to a TIN diversion or TIN block by Defendant[.]

*Id.*, ¶ 172.

Plaintiffs initially filed this putative class action against State Farm in the United States District Court for the District of Arizona on November 6, 2018. *See Chee Vang et al., v. State Farm Mutual Automobile Insurance Company*, No. CV-18-03870-PHX-DWL, 2019 WL 1676150 (D. Ariz. Apr. 17, 2019). On December 18, 2018, Defendant filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim. *Id.* at *2. Thereafter, Plaintiffs filed an amended complaint and Defendant filed another motion to dismiss for lack of personal jurisdiction and for failure to state a claim. *Id.* On April 17, 2019, the district court dismissed Plaintiffs' amended complaint for lack of personal jurisdiction under Rule 12(b)(2). *See id.* at *4–6. Over a year later, Plaintiffs filed this action on July 10, 2020 asserting the same claims. Doc. 1. On August 24, 2020, State Farm moved to dismiss Plaintiffs' complaint for lack of standing and for failure to state a claim. Doc. 10. Plaintiffs responded by filing the Amended Class Action Complaint (the "Complaint") on September 21, 2020. Doc. 15.[3] On October 5, 2020, Defendant filed another Motion to Dismiss the Complaint. Doc. 17.

---

[3] Defendant attempts to object to the timeliness of Plaintiff's Amended Complaint. Doc. 18, at 10 n.4. It seems Defendant forgot the Court granted the Parties' *agreed* motion (Doc. 5) allowing *Defendant* additional time to respond to Plaintiffs' Complaint and set a briefing schedule, which in turn allowed Plaintiffs until 9/21/2020 to respond to Defendant's motion to dismiss. Plaintiffs complied with the Court's order and filed their Amended Complaint on 9/21/2020. Defendant failed to object to the Court's order granting its agreed motion and failed to object to the timeliness of Plaintiffs' Amended Complaint when it was filed. Not only is Defendant's objection improper, but it is also waived for failure to raise it sooner.

**LEGAL STANDARD**

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss claims over which the district court lacks subject-matter jurisdiction, including claims for which the parties lack Article III standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Such challenge can take the form of a facial attack or factual attack. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citing *Apex*, 572 F.3d at 443–44). In evaluating a facial attack, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor to determine whether the allegations support an inference that the elements of standing exist. *Id.*; *see Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (holding the 12(b)(6) plausibility standard applies in 12(b)(1) facial challenges). In contrast, the plaintiff does not have these benefits where the Court considers a factual attack to jurisdiction. *Bazile*, 983 F.3d at 279. "[T]he court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Id.* (citing *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017); *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019)).

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible*, 799 F.3d at 639. To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendant on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements

of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### DISCUSSION

Plaintiffs bring claims under Section 1557 of the Patient Protection and Affordable Care

Act ("ACA"), 42 U.S.C. § 18116, and Title 42 U.S.C. § 1981 alleging Defendant developed an

elaborate nationwide scheme to avoid paying claims from members of racial and ethnic

minorities and immigrant communities across the United States. Doc. 15, at 41, 44; Doc. 21, at 8.

Section 1557 of the ACA prohibits discrimination based on the grounds prohibited by Title VII,

Title IX, the Age Discrimination Act, and the Rehabilitation Act. 42 U.S.C. § 18116(a). The ACA

provides, "an individual shall not, be excluded from participation in, be denied the benefits of, or

be subjected to discrimination under, any health program or activity, any part of which is

receiving Federal financial assistance . . ." *Id*. Section 1981 prohibits discrimination based on

race in making and enforcing contracts. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th

Cir. 2011); *Kyles v. J.K. Guardian Sec. Servs., Inc*., 222 F.3d 289, 301 (7th Cir. 2000). In their

Complaint, Plaintiffs do not request monetary relief, but rather, a permanent injunction enjoining

Defendant from "further violations of law as described above and commissions of the fraudulent

actions described herein." Doc. 15, at 46. In their Response brief, Plaintiffs describe this as relief

from "handling their claims for medical benefits under their *auto insurance policies* in a

discriminatory way." Doc. 21, at 11 (emphasis added).

Defendant brings it Motion to dismiss pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6). Defendant asks this Court to dismiss Plaintiffs' Complaint with prejudice

because Plaintiffs lack Article III standing and Plaintiffs do not allege a plausible violation of §

1981 nor the ACA. Doc. 18, at 2. As addressed below, the Court's analysis begins with Article III

6

standing. Defendant contends Plaintiffs lack standing because they received all of their PIP benefits and have not alleged any threat of future harm. Doc. 18, at 11–13. In their Response, Plaintiffs argue they have Article III standing because they continue to suffer on-going injuries from Defendant's discriminatory scheme. Doc. 21, at 10–12.

Before analyzing standing, the Court must first frame the standing issue with precision because Plaintiffs' Complaint is riddled with vague, broad-sweeping allegations. The Complaint sets out to include allegations of a widespread conspiracy-like scheme spanning the entire nation, across all State Farm policies, and affecting all minorities, but in reality, the factual allegations only address four individuals from *one national origin* and from *one state* whose medical payments covered by their *automobile policies* were delayed when they went to *one particular doctor* suspected of fraud by State Farm. Plaintiffs finally admit as much in paragraph 165 of their Complaint: "the above-named Plaintiffs had one crucial thing in common: Payments to them or their healthcare providers were held up and targeted for unlawful, racially discriminatory scrutiny by State Farm because State Farm secretly imposed a TIN diversion or TIN block on Dr. Lee and Chiro Health Clinic." Doc. 15, at 35. Similarly, the Complaint claims to allege insidious discrimination, but the facts read as a generalized insurance dispute[4] regarding Defendant's failure to pay "no-fault" automobile claims within the statutory period and a dissatisfaction with TIN diversions generally. It fails to explain how these members of the Hmong minority were targeted beyond legal conclusions. There is also a disconnect between the proposed class and the

---

[4] For example, Plaintiffs cite to https://www.cnn.com/2007/US/02/09/insurance.hardball/ and grossly misrepresent the contents of it. *See* Doc. 15, ¶ 5. The article says nothing about racial or ethnic minorities, rather, it is discussion of "auto insurers," not just State Farm who were "playing hardball" with paying out minor-impact soft-tissue injury crashes around the country where the accidents included little damage to the vehicle and personal injuries were "not easy to see by the naked eye." Furthermore, copying a 13-year-old article from CNN does not bolster Plaintiffs' claim regarding a widespread conspiracy of sorts nor is the Court required to accept the allegations of CNN as true.

basis for whom the Court is considering standing. The proposed class does not even include minorities specifically, rather, it broadly includes anyone affected by TIN diversions or blocks.

By their regurgitation of allegations in other lawsuits involving different plaintiffs than those here, this lawsuit seems like a new way to complain about issues that may have already been litigated regarding State Farm's practices. Simply quoting from allegations in third-party lawsuits from various states, involving different policies and interpretations of those policies, does not show a nationwide scheme exists with respect to the issues raised here. Considering they are mere allegations in complaints, other than the Complaint before this Court, and because Plaintiffs have not provided a basis to consider them, the Court disregards them. To the extent Plaintiffs cite an opinion issued by the Utah Supreme Court from nearly twenty years ago condemning some of State Farm's past practices, the Court fails to see, and Plaintiffs fail to identify, its relevance.

Against this backdrop, the Court views the issue of standing as whether the named Plaintiffs have standing to bring their claims regarding how State Farm has handled their medical claims for services billed from Dr. Lee. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). Plaintiffs seem to agree based on their recitation of the facts in their brief, which focus on the allegations regarding Dr. Lee and the named Plaintiffs. *See* Doc. 21, at 8–9. Therefore, the Court analyzes the injuries alleged by the named Plaintiffs, rather than the remaining vague allegations of a systematic scheme across the nation without reference to specific individuals affected by it.

## I.      Article III Standing

As the Party invoking federal jurisdiction, Plaintiffs bear the burden of establishing

Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Warth v. Seldin*, 422

U.S. 490, 518 (1975). To establish standing, a plaintiff must allege he "(1) suffered an injury in

fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). The injury in fact must be "concrete and

particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (quoting

*Lujan*, 504 U.S. at 560). "To determine whether an injury is redressable, a court will consider the

relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*,

141 S. Ct. 2104, 2115 (2021) (citing *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). Where a

plaintiff seeks "prospective relief against a harm not yet suffered—or one he believes he will

suffer again—he must establish that he 'is immediately in danger of sustaining some direct injury

as the result of the challenged official conduct, and that the injury or threat of injury is both real

and immediate, not conjectural or hypothetical.'" *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir.

2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

***The Parties' Arguments***

Defendant argues Plaintiffs lack standing because they have not alleged a past, present, or

future threat of harm. Doc. 18, at 11. There is no past or present injury because all of their

allowable PIP benefits have been paid in full by exhaustion of their policy limits or satisfaction

of their arbitral awards, including bills from Dr. Lee. *Id*. Plaintiffs' allegations regarding

underinsured or uninsured motorist benefits are irrelevant because they have not alleged

discrimination in Defendant's handling of those claims. *Id*. Defendant then shifts to explaining

why *Lyons* governs the standing issue here and Plaintiffs' argument for future harm and prospective relief fails. *Id.* at 12 (citing *Lyons*, 461 U.S. at 102; *Doe v. Purdue University*, 928 F.3d 652, 666 (7th Cir. 2019); *O'Shea*, 415 U.S. at 494–99; *Sierakowski v. Ryan*, 223 F.3d 440, 444 (7th Cir. 2000)).

In their Response, Plaintiffs claim their existing and ongoing injuries include: (1) bad faith delays by Defendant in paying their PIP claims and Defendant causing them to arbitrate their PIP claims before paying them, and (2) ongoing discriminatory practices that continue to injure Plaintiffs by (a) chilling their willingness to seek necessary medical treatment after an accident, (b) limiting their ability to seek ongoing medical care compensable under their polices, and (c) creating stigmatic injuries. Doc. 21, at 10–12. Plaintiffs clarify that they allege Defendant discriminates against racial and ethnic minorities in how they handle *all* claims including liability, PIP coverage, and uninsured and underinsured motorist coverage. *Id.* at 11.

In Defendant's Reply, it addresses Plaintiffs' arguments that Defendant's action has "chilled" Plaintiffs' willingness to seek medical care and discrimination is a stigmatic injury which confers standing. Doc. 23, at 2. Defendant contends only allegations regarding Plaintiffs Chee Vang and Mao Lee briefly mention being "chilled" while Yee Vang and J.Y. do not mention it at all. Therefore, Plaintiffs concede standing does not exist for Yee Vang and J.Y.'s claims. *Id*. Additionally, even if Chee Yang is hesitant in returning to Dr. Lee, it is not an "imminent harm" but rather a mere "profession of an intent to return,' which falls short of an Article III injury. *Id.* (citing *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013); *Lujan*, 504 U.S. at 564). Defendant further argues a stigmatic injury is wholly unrelated to the threat of future harm required for injunctive relief. *Id.* at 2–3 (citing *Lyons*, 461 U.S. at 107 n.8 and *Carello v. Aurora*

10

*Policeman Credit Union*, 930 F.3d 830, 836 (7th Cir. 2019)). The Court addresses the standing arguments in the order presented by Plaintiffs.

*Analysis*

### 1. Bad Faith Delays and Arbitration

To be clear, Plaintiffs do not allege a breach of contract or seek damages. They seek prospective injunctive relief. Doc. 21, at 11 n.2. Plaintiffs concede that Defendant has paid all of their PIP benefits associated with 2017 and 2018 accidents, including those from Dr. Lee. *See* Doc. 18, at 11; Doc. 21, at 10. Defendant submitted Exhibits to show Plaintiffs' PIP benefits have been paid and/or exhausted under the policy limit and/or have received arbitral awards. *See* Docs. 20-1–20-8. The Court consider evidence outside of pleadings where there is a factual challenge to standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("[W]hen considering a motion that launches a factual attack against jurisdiction, 'the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'") (internal citations omitted)).

Plaintiffs clearly do not have standing based on past delays of their claims where they are seeking prospective injunctive relief. As Justice White wrote in *Lyons*, "[t]he emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." 461 U.S. at 107 n.8. Thus, Plaintiff must establish there is a substantial likelihood that this injury will reoccur. The U.S. Supreme Court has "repeatedly reiterated that the 'threatened injury must be certainly impending to constitute injury in fact . . . [a]llegations of possible future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (collecting Supreme Court cases holding the same) (internal citations omitted).

Although *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1215 (11th Cir. 2019), cited by Defendant, is from another circuit, it provides a helpful analogy for the likelihood of a future injury here. In *Gerber*, the plaintiffs did not seek damages but rather sought a declaration regarding the interpretation of an insurer's policy. *Id.* at 1209. On the issue of future harm, the court held,

> [W]e can see no potential future threat to Carruthers, other than the possibility that he may someday be in another car accident; sustain an injury entitling him to PIP benefits; and still be insured by GEICO under the same or a similar policy being interpreted the same way, thereby having this issue present itself again. But that is too contingent to constitute a "substantial likelihood" of future injury.

*Id.* In applying *Gerber*'s rationale here, there would need to be a potential future threat that Plaintiffs will someday be in another car accident; sustain an injury entitling them to PIP benefits (or uninsured and underinsured motorist coverage[5]); still be insured by State Farm under the same or a similar policy; and have payments delayed due to a TIN diversion or block discriminatorily imposed on Plaintiffs' chosen healthcare provider. Notably, there is no allegation that Dr. Lee is still secretly under a TIN diversion.

Plaintiffs gloss over the fact that there is a triggering event prior to seeking treatment from Dr. Lee. They do not allege they experienced this treatment under their health insurance plan for treatment. Rather, they were in car accidents that triggered coverage under their automobile policies for PIP benefits. Plaintiffs further state that they have automobile policies with Defendant they intend to keep and seek further treatment. This is not the same situation as, for example, a disabled individual seeking injunctive relief who has indicated that she intends to return to the institution where ADA violations were occurring. *Cf. Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013). Rather, in this context, in order for Plaintiffs to "return" to

---

[5] Assuming Plaintiffs sufficiently alleged this injury was connected to Defendant's discriminatory actions.

Dr. Lee, they must be in an accident that triggers PIP benefits, need chiropractic treatment, and seek it from Dr. Lee or even another provider who is subject to a TIN diversion because of the same allegedly discriminatory practice.

Plaintiffs try to lump in the fact that Defendant offers health insurance policies, but there are no allegations that any of the named Plaintiffs had health insurance policies and the allegations center on the "no fault" insurance, in particular PIP benefits. In fact, Plaintiffs specifically accuse Defendant of targeting patients from minority and immigrant communities because they will be "more easily scared away from using their rightful *no-fault* insurance benefits" than insureds born in the United States. *See* Doc. 15, ¶ 101. Even the 13-year-old CNN article that Plaintiffs cite supports the notion that the focus is on minor car accident claims. The Court declines to make the inferential leap that the discriminatory allegations regarding Defendant's treatment of PIP benefits applies to benefits under general healthcare plans.

Finally, Plaintiffs claim *Lyons* does not foreclose standing because it only addressed "harms not yet suffered" and Defendant misapprehends Plaintiffs' injuries, which are actual, current, and ongoing. Doc. 21, at 10. Here, Plaintiffs misapprehend *Lyons* for two reasons. First, *Lyons* addressed harms not suffered as well as harms that one believes he will suffer again, the latter of which is at issue here. Second, Defendant's argument that *Lyons* forecloses standing does not rest on the harm suffered by Plaintiffs but rather the type of relief they seek, which dictates the standing inquiry. *See also Carello*, 930 F.3d at 833 ("And because he seeks injunctive relief, Carello must also demonstrate that he faces a 'real and immediate' threat of future injury."). As indicated above, Plaintiffs have failed to demonstrate that "real and immediate threat of future injury," therefore the Court cannot award the relief they seek.

Plaintiffs' proposed class further indicates they are actually seeking retrospective, rather

prospective, relief. The putative class includes individuals "who *had* coverage under a policy issued by Defendant for medical or chiropractic expenses and who *sought* payment for services for medical or chiropractic expenses . . . from a provider that was *subjected* to a TIN diversion or TIN block by Defendant[.]" ¶ 172. This definition does not envision future harm even though Plaintiffs demand an injunction elsewhere. Moreover, it is unclear what declaratory relief would even look like because Plaintiffs' allegations and relief requests are vague. It unclear which specific practices Defendant should be enjoined from or whether it should be enjoined from practices specific to these Plaintiffs or Dr. Lee. Aside from legal conclusions, there is one factual allegation that Defendant, at some point, told personnel that whether the provider's patients are from an immigrant community is a factor in detecting fraud. ¶¶ 5, 98. But is it discriminatory for State Farm to challenge providers who may be exploiting immigrants for financial gain where it has identified such scenario as a fraud trend? *See also* Minn. Stat. § 60A.954 (requiring insurers to implement and maintain procedures to prevent insurance fraud, report fraud to law enforcement, and cooperate in the prosecution of insurance fraud). This question will remain unanswered in this litigation because Plaintiffs lack standing for their claims.

2. **Ongoing Discrimination**

   a. **Chilling Effect**

Plaintiffs briefly argue "State Farm's discriminatory practices have chilled Plaintiffs' willingness to seek necessary medical care after an accident." Doc. 21, at 10. However, this argument presupposes that Plaintiffs will, or are likely to be, injured in another automobile accident. This is insufficient to establish a likelihood of future harm. Every motorist places him or herself in some danger each time they use the roadways. "The chance that lightning might

strike twice is not enough to justify injunctive relief." *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1177 (11th Cir. 2019).

### b. Limited Ability to Seek Medical Care

Next, Plaintiffs state "State Farm's ongoing discriminatory policies have limited Plaintiffs' ability to seek ongoing medical care that is compensable under Plaintiffs' insurance policies. These facts likewise must be accepted as true." Doc. 21, at 11. But "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. 544, 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Plaintiffs then note that claims made under the uninsured and underinsured motorist coverage are included. Doc. 21, at 11. However, paragraph 41, which they cite for support is a general allegation that many states require insurers to provide uninsured and/or underinsured coverage. Doc. 15. It is not specific to State Farm or these policies. Even if the Court accepted this unsupported allegation as true, Plaintiffs' Complaint does not allege Defendant discriminatorily handled Plaintiffs' request for underinsured or uninsured motors benefits.

Plaintiffs vaguely argue they are encountering the same baseless refusals to pay underinsured or uninsured benefits, but the allegations they cite in their Complaint do not support it. *Id.* at 12 (citing Doc. 15, ¶¶ 130–31, 146–47). Rather, these paragraphs state Mr. Vang currently seeks payment of medical claims under the underinsured motorist coverage, without any allegations regarding the handling of those claims. Doc. 15, ¶ 131. The allegation regarding Ms. Lee only states that she has made a claim for uninsured motorist benefits but nothing further on that claim. *Id.* at ¶ 146. The remaining two cited paragraphs reference a "chilling effect." *Id.* at ¶¶ 130, 147. Notably, the allegations do not, for example, state Plaintiffs have stopped seeking medical treatment or that they want to seek treatment but will not seek treatment because of the

threat of Defendant's discriminatory practices. Therefore, the allegations are mere legal conclusions that the Court need not accept as true. In fact, paragraph 147 of the Complaint states that Ms. Lee continues to receive treatment from Dr. Lee despite the "chilling effect." Doc. 15. Further on the topic of uninsured or underinsured benefits, Plaintiffs do not allege that the TIN diversion imposed of Dr. Lee is still in place, which could support their burden to show a future injury is imminent that the payments will be delayed due to discrimination. As the Party invoking the Court's jurisdiction, Plaintiffs have the burden to establish they have Article III standing. *Spokeo*, 136 S. Ct. at 1547. Their failure to support their arguments with well-pleaded allegations in their Complaint is fatal.

### c. Stigmatic Injury

Both Parties cite *Carello*, 930 F.3d at 830, to support their arguments regarding a stigmatic injury. However, aside from the isolated quotes from *Carello* that Plaintiffs emphasize, *Carello* is more supportive of Defendant's position. As quoted by Plaintiffs, the Seventh recognized, as Plaintiffs indicate, "[t]here is no doubt that dignitary harm is cognizable; stigmatic injury is 'one of the most serious consequences of discrimination,'" and "[a] plaintiff 'personally denied equal treatment' by the challenged discriminatory conduct" has suffered a concrete injury." *Id.* at 836 (quoting *Allen*, 468 U.S. at 755). Plaintiffs conveniently omit the second portion of those remarks by the Seventh Circuit, as indicated in italics below:

> There is no doubt that dignitary harm is cognizable; stigmatic injury is "one of the most serious consequences" of discrimination. *At the same time, "not all dignitary harms are sufficiently concrete to serve as injuries in fact."* A plaintiff "'personally denied equal treatment' by the challenged discriminatory conduct" has suffered a concrete injury, *but dignitary harm stemming from the mere knowledge that discriminatory conduct is occurring is an "abstract stigmatic injury" that the plaintiff lacks standing to vindicate.*

*Id.* (internal citations omitted).

Here, Plaintiffs have not alleged a concrete and particularized stigmatic injury. In cases of dignitary harm, "indignation at violation of the law is not concrete because it does not impact the plaintiff personally; it is not particularized because it does not affect him in an 'individual way.'" *Carello*, 930 F.3d at 834 (citing *Lujan*, 504 U.S. at 560 n.1; *Allen*, 468 U.S. at 756). A harm is particularized if there is "some connection between the plaintiff and the defendant that 'differentiates' the plaintiff so that his injury is not 'common to all members of the public.'" *Id*. (quoting *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019)). In *Carello*, the alleged injury was not particularized because there was no connection between the plaintiff and the defendant credit union that distinguished him from anyone else who was ineligible for membership at the credit union and offended by the defendant's failure to comply with the ADA. *Id.* at 635.

Plaintiffs claim their injuries are stigmatic because they endured and are enduring lengthy delays and additional loopholes. Doc. 21, at 12. But nothing distinguishes the alleged harms from that of the entire group affected by TIN diversions imposed on their healthcare providers. *See Clay v. Fort Wayne Cmty. Sch.*, 76 F.3d 873, 878–79 (7th Cir. 1996) (noting that "generalized grievances shared in substantially equal measure by a large class of citizens" cannot support standing). All insureds being treated by the targeted provider are treated the same—the payments are delayed. Doc. 15, ¶¶ 81–82, 91. Plaintiffs do not allege, for example, that TIN diversions are *only* imposed on minority and immigrant groups or that Defendant treats TIN diversions on a subject provider differently based on the insureds' race or ethnicities. *Id*. Relatedly, Plaintiffs seek to certify a class of at least tens of thousands of individuals across the nation, which hardly make these stigmatic injuries "personal" or particularized, as it effects a large class or people. Doc. 15, ¶ 172. The proposed class makes no distinction based on race, ethnicity, or national

origin. *Id.* The Complaint asks that these class members be treated the same as policyholders who do not seek treatment from providers who are subject to a TIN diversion. *Id.* at ¶ 173.

Furthermore, the Court is troubled by the fact that Dr. Lee is allegedly the one directly being denied equal treatment by having a TIN diversion imposed on him for a "sham investigation" whereas Plaintiffs are indirectly affected by this treatment. Plaintiffs essentially allege that Defendant targets doctors to, in turn, evade claims from minority and immigrant patients. Yet, their allegations mention treatment from other facilities but do not allege those providers were subject to the same TIN diversion process, which begs the question of whether the focus is the doctors or the patients. *See id.* at ¶ 152. Aside from the one factor of looking at whether the doctor serves patients from "immigrant countries," the factors for identifying fraud focus on the doctor's conduct including his high volume of billing, his sharp increases in billing, the CPT codes he uses, and his treatment patterns. It appears Plaintiffs could avoid these jurisdictional hurdles if the suit included Dr. Lee as a plaintiff, but he is not a party to this litigation and the Court need not speculate as to why that is so.

As discussed above, Plaintiffs lack Article III standing to bring their claims, therefore, this case must be dismissed for lack of jurisdiction. It is clear none of the Plaintiffs have standing to bring their claims for prospective relief based on State Farm's handling of their PIP benefits. The allegations regarding Plaintiff Chee Vang's and Plaintiff Mao Lee's outstanding uninsured/underinsured benefits are too vague to satisfy the requirements for Article III standing. To the extent these Plaintiffs could amend their Complaint to properly allege standing, such amendment would be futile because Plaintiffs fail to state a § 1981 or ACA claim under Fed. R. Civ. P 12(b)(6). This is Plaintiffs' fourth complaint regarding the issues raised in this litigation. While no court has ruled on the merits of Defendant's 12(b)(6) arguments, Defendant has

18

identified deficiencies regarding Plaintiffs' § 1981 and ACA claims since this case begin in

Arizona in late 2018. As indicated below, the Court finds no reason to grant Plaintiffs a fifth

opportunity to plead their claims.

## II.    Failure to State a Claim under § 1981 and the ACA

### A.  § 1981

Defendant asserts Plaintiffs failed to allege a plausible claim under § 1981 for two main

reasons: Plaintiffs do not allege facts supporting racial animus and do not allege but-for

causation or intentional discrimination. Doc. 18, at 13–18; Doc. 23. Plaintiffs dispute

Defendant's contention that they failed to adequately plead a § 1981 claim based on race and

assert Defendant mischaracterized Plaintiffs' factual allegations. Doc. 21, at 13–18. After

considering the Parties' arguments and cases cited in their briefs, the Court finds Plaintiffs' §

1981 claim fails because a § 1981 claim cannot be maintained based solely on national origin,

the allegations fail to allege a plausible claim based on race discrimination, and Plaintiffs fail to

allege but-for causation.

To prevail in a § 1981 claim, "a plaintiff must initially plead and ultimately prove that,

but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v.

Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Nothing in the

statutory text indicates that the but-for causation test "should change its stripes (only) in the face

of a motion to dismiss." *Id.* at 1015. National origin is not protected under § 1981, but ethnicity

is. *Arevalo-Carrasco v. Middleby Corp., Inc.*, 851 F. App'x 628, 630–31 (7th Cir. 2021) (citing

*Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Ortiz v. Werner Enters., Inc*, 834

F.3d 760, 764 (7th Cir. 2016)). The "race- or ethnicity-based discrimination must have been the

determinative reason" for the adverse action. *Id.* (citing *Comcast*, 140 S. Ct. at 1019).

Plaintiffs do not argue national origin on its own is protected but rather that the intersect of race and national origin is protected because race is an included basis for the discrimination. Doc. 21, at 18. But there is a disconnect between Plaintiffs' brief and what the Complaint actually alleges. The allegations center on Plaintiffs' national origin, not their race. *See e.g.* Doc. 15, ¶¶ 5–6, 11, 54, 66, 77, 94, 98. Plaintiffs do not even identify their race in the Complaint. *See id.* at ¶ 95 ("The four named plaintiffs here are Hmong and, in Minnesota, many accident victims are of Hmong, African, or Asian descent, and many are Hispanic or Latino."). Their brief clarifies that Plaintiffs' race is "Asian" and their ethnicity is "Hmong." Doc. 21, at 13. Of course, § 1981 protects both race and ethnic discrimination. The Court only notes this small distinction for support that this case is about Plaintiffs' national origin.

In reviewing Plaintiffs' allegations regarding race, they are mere legal conclusions. For example, in *Mir v. State Farm Mut. Auto. Ins. Co.*, the Seventh Circuit recently held a plaintiff failed to "nudge his § 1981 claim across the line from conceivable to plausible" where the plaintiff merely alleged that State Farm "knew about his East-Indian/Pakistani race" and was "motivated by discrimination against him" when it denied him uninsured-motorist benefits. 847 F. App'x 347, 350 (7th Cir. 2021), *reh'g denied* (Mar. 11, 2021) (quoting *Twombly*, 550 U.S. at 570) (internal citations omitted). This allegation was also an insufficient but-for causation pleading. *Id.*

In their brief, Plaintiffs repeatedly remark they simply need to plead "plaintiffs have suffered discrimination because of their race." Doc. 21, at 16. But "parroting the elements of a claim" does not meet the *Iqbal* standard. *Mir*, 847 F. App'x at 349. Plaintiffs admit the procedures appear race neutral but claim it is a façade for a discriminatory outcome that State Farm intended. Doc. 21, at 17–18. It is unclear how the façade is plausibly accomplished because

the allegations focus on State Farm looking for providers who "cause State Farm to the most in automobile-accident bodily-injury claims." Doc. 15, ¶ 72. Plaintiffs have not alleged enough "factual content to 'nudge' [their] claim of purposeful discrimination "across the line from conceivable to plausible." *Ashcroft*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S., at 570). Nor do they provide facts to support a reasonable inference that Defendant "intended a discriminatory outcome." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 886 (7th Cir. 2012).

Additionally, the allegations in the Complaint regarding Plaintiffs' race and ethnicity vary from their brief in that the Complaint repeatedly states Plaintiffs' race motivated State Farm's decision to discriminate. For example, Plaintiffs state "[t]he insureds' race, ethnicity, and/or national origin *motivates* State Farm's decision to impose TIN diversions and TIN blocks on providers," and "State Farm's conduct was *motivated* by knowing and intentional discrimination based on race, ethnicity, and nationality of its insureds." Doc. 15, ¶¶ 91, 105, 198. Like in *Mir*, "motivates" does not equate to "but-for" causation. Elsewhere, the fact that other cases have been filed against State Farm alleging discriminatory actions distinct from the TIN diversion theories alleged here is irrelevant to whether Defendant engaged in impermissible discrimination in this case. *Id.* at ¶ 105.

Even if Plaintiffs had raised more than mere conclusory allegations regarding race and/or ethnic discrimination, Plaintiffs fail to allege that Defendant singles out policyholders of the Hmong ethnicity. It is also unclear how Defendant would have known which ethnicity Plaintiffs identified with or even their national origin. Plaintiffs offer no explanation as to how Defendant knew of their national origin. When considering the facts and context of this case, this omission precludes a finding that the claim is plausible. *See Twombly*, 550 U.S. at 555. Further, there is a difference between ethnicity and national origin. *See Arevalo-Carrasco*, 851 F. App'x at 630–31

(reiterating race and ethnicity are protected under § 1981, but national origin is not). Cases interpreting § 1981 recognize that distinction, however subtle it may be. One can be from United States as a matter of national origin but identify as any number of ethnicities as many countries are comprised of a number of ethnic groups. Immigrating from another country is distinct and Plaintiffs do not allege that Defendant used race as factor in identifying fraud, only that they used immigration status, i.e., national origin.

Beyond pleading deficiencies, Plaintiffs have pled themselves out of Court. They contend State Farm instructed personnel to use whether the provider's patients "are from an immigrant community" as one of many factors to determine whether a particular provider is "suspect." ¶¶ 5, 98. Plaintiffs gave several other factors that Defendant uses to detect fraud including, certain "treatment patterns, sharp increases in billing, or high volume of billing," "how much a particular provider has billed State Farm," "usage of certain Current Procedure Technology ("CPT") codes," and "the frequency with which medical providers have patients in common." ¶¶ 57–58, 63, 73, 76, 78. They do not allege whether patients are from another country is a determinative factor or that any factor is given more weight than another. Plaintiffs also do not allege policyholders of their race are treated less favorably than policyholders from a different racial or ethnic background who visit providers subject to a TIN diversion. *See Comcast*, 140 S. Ct. at 1015 ("If the defendant would have responded the same way to the plaintiff even if he had been white, an ordinary speaker of English would say that the plaintiff received the 'same' legally protected right as a white person."). In sum, based on the pleadings, Plaintiffs are unable to allege that but for their race, or ethnicity, they would not have been harmed.

**B. The ACA**

The Parties agree that to state a claim under Section 1557 of the ACA, Plaintiffs must plausibly allege (1) they were discriminated against in violation of Title VI and (2) the discrimination occurred under a "health program or activity" subject to the ACA. Doc. 18, at 19 (citing *Briscoe v. Health Care Servs. Corp.*, 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017)); Doc. 21, at 19. Plaintiffs claim they have adequately pled that they suffered intentional discrimination by State Farm on the basis of race and national origin, under a "health program or activity, any part of which" received federal funding. Doc. 21, at 28.

Defendant makes two principal arguments with respect to the ACA claim: (1) Plaintiffs do not adequately allege a Title VI violation and (2) Plaintiffs have not alleged discrimination under a "health program or activity" that is subject to the ACA. Doc. 18, at 18–21; Doc. 23. Specifically, Plaintiffs fail to make a plausible Title VI claim because they have not alleged intentional discrimination, but rather disparate impact, and Plaintiffs cannot allege they were "the intended beneficiary of, an applicant for, or a participant in a federally funded program" as required in Title VI claims. Doc. 18, at 19 (citing *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001); *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980)). On this first issue, Plaintiffs retort it is clear they alleged intentional discrimination and Congress did not intend to incorporate all of the substantive requirements of a Title VI claim into § 1557. Doc. 21, at 26–27. Regarding the second argument, Plaintiffs claim Defendant's interpretation of "health program or activity" rests on newly adopted, highly controversial regulations ("2020 Rule") adopted by the Department of Health and Human Service ("HHS"). *Id.* at 19–28. Plaintiffs further contend the 2020 Rule contravenes the ACA's statutory text and Congress' intent. *Id.* at 19–26. The second issue addressed by the Parties resolves this matter, therefore the Court's

analysis begins and ends with whether Plaintiffs have shown discrimination occurred under a "health program or activity" subject to the ACA.

Plaintiffs again engage in hide the ball tactics with their citation to and description of *Whitman-Walker Clinic, Inc. v. U.S. Dep't. of Health & Hum. Servs.*, Case No. 20-1630, 2020 WL 5232076, at *45 (D.D.C. Sept. 2, 2020). Plaintiffs' presentation of this case in their opening argument infers that the 2020 Rule adopted by the HHS is highly controversial because it limits the meaning of "health program or activity" and the Rule is now subject to a nationwide injunction.[6] However, upon reading *Whitman-Walker*, which spans 126 pages, it appears the 2020 Rule is controversial because it ignored the Supreme Court's holding in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), which was issued four days prior to the HHS' publication of the 2020 Rule. *Bostock* held that discrimination based on sexual orientation or transgender status "necessarily entails discrimination based on sex," therefore it falls within Title VII's protections. 140 S. Ct. at 1747. The 2020 Rule repealed the 2016 Rule's definition of "on the basis of sex," which had "explicitly prohibited discrimination based on sex stereotyping and gender identity." *Whitman-Walker*, 485 F. Supp. 3d at 14. More glaringly, the *Whitman-Walker* court specifically held plaintiffs did not have standing to bring claims regarding the narrowing scope of covered entities under section 1557, therefore it did not address the merits of those claims. *Id.* at 31–32. Likewise, the court held the plaintiffs did not have standing with respect to the 2020 Rule on the enforcement mechanism and applicable legal standard in Section 1557. *Id.* at 33. Thus, the court issued an injunction as to the enforcement of the "sex-stereotyping and religious exemption issue" in the 2020 Rule, it did not enjoin the provisions at issue in the instant lawsuit. Based on

---

[6] *But see* Doc. 21, at 20 n.4. Tucked-away in a footnote, on the next page, for a sentence standing for a different proposition, Plaintiffs acknowledge *Whitman-Walker* did not address the HHS's decision to narrow the entities covered under § 1557.

reading *Whitman-Walker*, the Court ignores Plaintiffs' invitation to reject Defendant's position

simply because it rests, in part, on "newly adopted, highly controversial regulations."

Defendant urges the Court to dismiss Plaintiffs' ACA claim because they are unable

allege discrimination under a "health program or activity" that "is receiving Federal financial

assistance," as required by Section 1557. Doc. 18, at 20 (citing 42 U.S.C. § 18116(a)). For

support, Defendant cites to the statutory language as well as the 2020 Rule. Defendant points to

the "definitions" section of the ACA, which lists "automobile medical payment insurance" as an

"excepted benefit" that is "not subject" to its requirements. *Id.* (citing 42 U.S.C. § 300gg-

91(c)(1)(E); 42 U.S.C. § 18111; Final Rule, 85 Fed. Reg. 37,160, 37,173–74 (June 19, 2020)

(excepted benefits are not subject to Section 1557 unless provided by a federally funded entity

that is "principally engaged in the business of providing healthcare")). Further, based on the

statutory language and the 2020 Rule, in Defendant's view, Plaintiffs must allege State Farm

receives federal financial assistance for its automobile insurance policies, but they do not make

this allegation. Doc. 18, at 20. Defendant also relies solely on the 2020 Rule for the proposition

that an entity must be principally engaged in the business of "providing" healthcare, not

"insuring" its cost, for all its operations to be subject to Section 1557. *Id.* at 21 (citing 45 C.F.R.

§ 92.3(b)). Plaintiffs refute both regulations from the 2020 Rule on the basis that they are

inconsistent with the ACA and congressional intent, therefore, they cannot protect Defendant

from liability. Doc. 21, at 19 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467

U.S. 837, 842–43 (1984)). While Plaintiffs' argument that the ACA applies to providers of health

care as well as health care insurers sounds persuasive, the bigger issue is whether Defendant is

subject to the ACA even though the insurance at issue here is automobile insurance, not health

insurance, and Plaintiffs do not allege Defendant received federal assistance for automobile

insurance. *See* Doc. 21, at 19–24. Plaintiffs address this issue in the next section of their brief. Doc. 21, at 24–26.

Because this case can be resolved based on the statutory language and this case is not a declaratory action seeking an injunction on the 2020 Rule, the Court declines to address whether the 2020 Rule with respect to the scope of covered entities should be afforded *Chevron* deference and enforced. Moreover, Plaintiffs have not alleged, and the Parties have not addressed, whether Plaintiffs would have standing to challenge the Rule 2020. For these reasons, the Court declines to address this issue.

Turning to the language in the ACA, Defendant has indicated it has found no reported case, apart from this one, that expanded the ACA to make all property and casualty insurance, that include coverage for personal injury, subject to the ACA. Doc. 18, at 21. The Court has found no case that applied the ACA to regulate automobile insurance solely by the virtue of it including coverage for personal injury, such as PIP, uninsured, and underinsured benefits, which are at issue here. As indicated below, the Court finds Plaintiffs' position contravenes the statutory text and congressional intent.

Section 1557 of ACA provides,

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under *title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.)*, title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, *any health program or activity, any part of which is receiving Federal financial assistance*, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a). This section further states, "[t]he enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall

26

apply for purposes of violations of this subsection." *Id*. Elsewhere, 42 U.S.C. § 18111 holds, "[u]nless specifically provided for otherwise, the definitions contained in section 300gg–91 of this title shall apply with respect to this title."

The Complaint describes State Farm as an automobile insurance company principally engaged in underwriting and administering policies and selling automobile insurance to customers. Doc. 15, ¶¶ 25–26. Plaintiffs claim that by providing coverage for health expenses in nearly every automobile policy, which, recall is required by "nearly every state in the country," State Farm's principal activity "involves" health related insurance. *Id*. at ¶¶ 26, 28. With respect to financial assistance, Plaintiffs allege a subsidiary of Defendant receives federal financial assistance in the form of direct payments for State Farm's Medicare Advantage plans and Medicare Part D and through subsidies and tax credits in connection with products sold through ACA health insurance exchanges. *Id*. at ¶ 44. Notably, this makes no connection that Defendant receives federal assistance for their automobile policies in addition to their healthcare policies.

Section 1557 starts with the statement, "[e]xcept as otherwise provided for in this title (or an amendment made by this title)," which presumes there may be exceptions to the prohibition on discrimination "as otherwise provided for in this title." Section 1557 is found in Title I of the ACA within Subtitle G, "Miscellaneous Provisions." Subtitle G contains a "Definitions" section. Elsewhere in drafting the ACA, Title V also has a definitions section pertaining to its "Title." Section 5002. Title VI, Subtitle H contains a "Definitions" sections specific to its "Subtitle." Section 6702. *See also* Title I, Subtitle D, Part I, Section 1304 (providing "related definitions" in this "Title"); Title X, Subtitle B ("Provisions Relating to Title II"), Part I, Section 10211 (establishing definitions in this "part"). All of this is to show, Congress designated in various areas of the ACA whether the "Definitions" applied to a part, subtitle, or title. Title I, Subtitle G,

Section 1551 also contains a definition section which states, "[u]nless specifically provided for otherwise, the definitions contained in section 2791 of the Public Health Service Act (42 U.S.C. 300gg–91) shall apply with respect to this title." Based on these considerations, the Court presumes the definition applies to the specific "Title" within the Act, not Title 42 itself, as Defendant suggests. Doc. 23, at 11. The Patient Protection and Affordable Care Act refers to itself as the "Act" not the "Title." As relevant to this lawsuit, 42 U.S.C. § 300gg–91(c), states:

> (c)Excepted benefits
> For purposes of this subchapter,[7] the term "excepted benefits" means benefits under one or more (or any combination thereof) of the following:
>> **(1) Benefits not subject to requirements**
>>> (A)Coverage only for accident, or disability income insurance, or any combination thereof.
>>> (B)Coverage issued as a supplement to liability insurance.
>>> (C)Liability insurance, including general liability insurance and **automobile liability insurance.**
>>> (D)Workers' compensation or similar insurance.
>>> **(E)Automobile medical payment insurance.**
>>> (F)Credit-only insurance.
>>> (G)Coverage for on-site medical clinics.
>>> (H)Other similar insurance coverage, specified in regulations, under which benefits for medical care **are secondary or incidental to other insurance benefits**.

Plaintiffs cite to 42 U.S.C. § 300gg–63(a) and 42 U.S.C. § 300gg–21(b)-(c) but the Court does not see the relevance of these provisions and Plaintiffs do not explain them. If anything, § 300gg–63(a) further supports Defendant's position. It states "Exception for certain benefits . . . The requirements of this part shall not apply to any health insurance coverage in relation to its provision of excepted benefits described in section 300gg–91(c)(1) of this title." 42 U.S.C. § 300gg–63(a).

---

[7] For reference, 42 U.S.C. 300gg–91(c) is part of 42 U.S. Code "Subchapter XXV—Requirements Relating To Health Insurance Coverage."

As indicated above, Congress explicitly incorporated the definitions in 42 U.S.C. § 300gg–91(c) in the ACA, which stated, "[u]nless specifically provided for otherwise, the definitions contained in section 300gg–91 of this title shall apply with respect to this title." 42 U.S.C. § 18111. In *Ohio v. United States*, the Sixth Circuit noted the statutory framework in the ACA adopts a series cross-references to the Public Health Service Act ("PHSA") including definitions from 42 U.S.C. § 300gg–91. 849 F.3d 313, 319 (6th Cir. 2017) (discussing the term "group health plan" as adopted in 42 U.S.C. § 18021(b)(3)).

Although this appears to be an issue of first impression, the Court does not believe Section 1557 of the ACA extends to automobile insurance which is required to cover medical expenses by way of PIP or underinsured/uninsured motorist benefits. The only statutory language provided suggests that it is does not. 42 U.S.C. § 300gg–91(c) states "excepted benefits" include "automobile liability insurance"; automobile medical payment insurance; and "benefits for medical care are secondary or incidental to other insurance benefits." Plaintiffs do not argue that these terms are vague or ambiguous. A plain reading of these categories suggests the insurance benefits at issue in this case are not subject to Section 1557 of the ACA. Plaintiffs must demonstrate Defendant is a covered entity by virtue of their burden to state a claim upon which relief to be granted. Based on the briefing, which included opportunities to further delineate the statutory text or provide precedent supporting their position, they have not done so. Accordingly, Plaintiffs' Complaint is dismissed without prejudice for lack of standing. Alternatively, even if Plaintiffs have standing to bring this suit, the Court would dismiss the action on the merits for the reasons set forth in Section II of this Opinion.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 17) to Dismiss is GRANTED.

This matter is now terminated.


Signed on this 2nd day of December, 2021.

<u>s/ James E. Shadid</u>
James E. Shadid
United States District Judge